**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TORRAY WILKERSON, <br><br> Petitioner, <br><br> v. <br><br> CHERRYLE HINTHORNE, Warden,[1] <br><br> Respondent. | Case No. 17-cv-05275 <br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

  Petitioner Torray Wilkerson, a prisoner in custody of the State of Illinois, seeks a writ of habeas corpus under 28 U.S.C. § 2254. [1].[2] His petition claims that his state criminal trial suffered from three constitutional flaws: first, that the state put on insufficient evidence to convict him of possession with intent to deliver heroin, in violation of the Due Process Clause. *Id.* at 5–6, 10–11. Second, that his trial counsel provided ineffective assistance by failing to pursue a strategy challenging the weight of the heroin at issue in the case. *Id.* at 6, 11–12. And third, that his trial counsel provided ineffective assistance by choosing not to pursue a strategy that would have shifted responsibility for the heroin to Wilkerson's brother, who was Wilkerson's codefendant. *Id.* at 6, 12. Wilkerson claims that trial counsel avoided this strategy because counsel had a disabling conflict due to counsel's past representation of Wilkerson's brother and because Wilkerson's brother was paying Wilkerson's legal bills. *Id.* at 12.

  Under Seventh Circuit caselaw, litigants must present developed arguments and support those arguments with citations to pertinent authority. *See, e.g.*, *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). None of the three claims in Wilkerson's petition is supported by pertinent authority, save two citations to United States Supreme Court cases supporting generic legal standards. This form of presentation does not advance the argument that Wilkerson needs to make for his petition to succeed— that the Illinois Appellate Court decision denying these claims was contrary to or an unreasonable application of clearly established federal law as determined by the

---

[1] Cherryle Hinthorne, Warden of the Illinois River Correctional Center, is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d); Rules Governing § 2254 Cases 2(a).
[2] Bracketed numbers refer to docket entries and are followed by page and/or paragraph numbers. Page numbers refer to the CM/ECF page number.

Supreme Court. 28 U.S.C. § 2254(d)(1). Thus, all three of Wilkerson's claims are forfeited. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("forfeiture is the failure to make the timely assertion of a right").

In the alternative, the court also concludes that each of the claims in Wilkerson's petition lacks merit. On the due process claim, the state court decision was not an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). The state court's resolution of the first ineffective-assistance claim was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). And its resolution of the second ineffective-assistance claim was not an unreasonable application of *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Wilkerson's petition is denied. No certificate of appealability will issue because jurists of reason could not debate the court's conclusion.

## FACTUAL BACKGROUND

On May 1, 2014, Chicago police officers executed a search warrant at 2611 W. Ogden Avenue, a "three-story building contain[ing] three apartments in the rear and an empty storefront with two apartments above it." *People v. Wilkerson*, 63 N.E.3d 929, 934 (Ill. App. Ct. 2016); *see also* [1] at 6. "The search warrant was confined to the first-floor rear apartment." *Wilkerson*, 63 N.E.3d at 934. The target of the warrant was Todd Jones. *Id.*

One of the officers, Officer Mingari, knocked on a rear door to the storefront after he heard the sounds of a television coming from inside. *Id.* at 934. A male voice on the other side asked who it was; Mingari answered that he was a Chicago police officer. *Id.* A second male voice then told Mingari to "hold on." *Id.* At that point, Mingari heard a handgun slide being pulled back and simultaneously heard the front door of the storefront opening. *Id.* Immediately, another officer yelled that someone was climbing a gate in front of the building and running. *Id.* A third officer who pursued and eventually captured the running individual identified him as Senica Wilkerson, petitioner's brother.[3] *Id.* at 934, 937.

Mingari moved toward the front of the building, where he saw one of his fellow officers pursuing Senica. *Id.* at 934–35. From outside the front of the building, Mingari could see through the open front door into the storefront. *Id.* at 935. With that vantage point, Mingari saw a man, whom Mingari identified in court as Torray Wilkerson, exit through the back door and run upstairs to the second floor. *Id.* Mingari followed and went back into the building. *Id.* He heard a door slam on the building's second floor and waited for backup before proceeding further. *Id.*

---

[3] The court will refer to petitioner as "Wilkerson," or "Torray" where necessary for clarity, and to his brother as "Senica."

2

Once backup arrived, Mingari knocked on the second-floor rear apartment door to no response. *Id.* Over the radio, Mingari heard that an individual in the second-floor rear apartment had thrown a handgun onto an adjacent roof. *Id.* Wilkerson eventually opened the door and allowed Mingari and the backup officer to enter. *Id.* The officers temporarily detained Wilkerson. *Id.* The officer who had seen the man in the second-floor apartment throw the handgun identified Wilkerson as the individual he had seen discard the firearm. *Id.*

With the Wilkerson brothers in custody, Officer Mingari returned to the building's first floor. *Id.* From the building's rear hallway, he observed several packages of drugs and two dogs in a cage in plain view through the open rear door of the storefront. *Id.* Mingari and fellow officers conducted a security sweep of the storefront and after a search, seized 85 packages of heroin, a large quantity of heroin on a mirror on a toilet in the bathroom, a large case of the prescription sleeping aid Dormin, and several other packages of drugs. *Id.* A more thorough search revealed a trash bag containing ammunition and a clear, knotted bag containing more heroin, as well as four digital scales, three mixers, and a sifter. *Id.*

## PROCEDURAL HISTORY

The State of Illinois charged Wilkerson with six felony counts in the Circuit Court of Cook County; the state dismissed two of the counts before trial. *Id.* at 934. After a bench trial, the judge found Wilkerson guilty of being an armed habitual criminal, possession with the intent to deliver more than 900 grams of heroin, and unlawful use of a weapon by a felon. *Id.* at 933. The judge found him not guilty of armed violence. *Id.* Wilkerson was sentenced to the minimum fifteen years on the possession-with-intent-to-deliver count and seven years on the armed-habitual-criminal count, to be served concurrently. *Id.* The unlawful-use-of-a-weapon count merged into the latter count. *Id.*

After the trial and sentencing, Wilkerson moved for reconsideration of the findings of guilt. *Id.* at 939. He contended that the state put on insufficient evidence to show constructive possession, that the search warrant the officers had been executing was flawed, and that he received ineffective assistance of counsel at trial. *Id.* The trial court held an evidentiary hearing on the ineffective-assistance claim. *Id.* Trial counsel stated that he had entered an appearance on behalf of petitioner's brother, Senica, at Senica's bond hearing. *Id.* In addition, Senica had been paying trial counsel to represent Torray in the case, Torray was aware of these payments, and Torray and trial counsel had discussed the arrangement. *Id.* Under questioning as to why he did not pursue a strategy wherein he would argue that Senica was the person in possession of the drugs as opposed to Torray, trial counsel responded that he thought the brothers had very similar defenses, and that he and Torray had agreed on a strategy of questioning Officer Mingari's vantage point based on their view that Mingari could not have seen what he claimed to have seen. *Id.*

3

The trial court denied Wilkerson's motion for reconsideration, reasoning that trial counsel had no conflict and that he had not provided ineffective assistance. *Id.* Wilkerson timely appealed. *Id.*

The Illinois Appellate Court affirmed. *Id.* at 945. As relevant here, its decision had three key holdings.

*First*, taking the facts in the light most favorable to the prosecution, the court held that the prosecution had put on sufficient evidence to sustain the conviction for possession with intent to deliver heroin. *Id.* at 943–44. Wilkerson argued that the evidence did not establish that he constructively possessed the heroin with intent to deliver it. [7-2] at 13–22. But the Appellate Court pointed to five facts that, taken together, were enough to establish constructive possession. (1) The storefront was vacant. (2) Wilkerson had no reason to be present in the storefront unless he was in possession of the heroin. (3) Officers heard both Torray and Senica inside the storefront from where the heroin was recovered. (4) Both fled the scene. And (5) they were the only individuals in the area. *Wilkerson*, 63 N.E.3d at 944.

On the intent to deliver, the Appellate Court pointed to the significant distribution paraphernalia recovered from the scene. *Id.* This included the prescription sleeping aid Dormin—which Officer Mingari testified was often used to cut drugs—the digital scales, and the significant quantity of heroin, which was much too large for personal use. *Id.*; *see also id.* at 935 (describing Officer Mingari's testimony that Dormin is often used "as a cutting substance in the mixing of drugs").

*Second*, the Appellate Court held that Wilkerson's trial counsel did not provide ineffective assistance by choosing not to challenge the weight of the heroin recovered. *Id.* at 941–42. Trial counsel stipulated that if called, the state's forensic chemist would testify that the mixture she tested had heroin in it and weighed 900.5 grams, over the 900-gram threshold weight that results in a 15-year minimum sentence. *Id.* at 938, 941. Wilkerson's argument had two bases. One was that the heroin recovered from the mirror in the storefront bathroom had three distinct piles that Officer Mingari commingled by placing all three together in a single Rubbermaid bin. [7-2] at 11, 28–32. According to Wilkerson, one of these piles could have contained no heroin and the state would have been unable to prove the existence of an essential element of the crime: that the mixture containing heroin weighed over 900 grams. *Id.* at 29, 31. Wilkerson claimed that his attorney provided constitutionally deficient performance that prejudiced him by stipulating to the chemist's findings and failing to cross-examine the officers on this alleged commingling. *Id.* Wilkerson also argued that stipulating to the weight of the heroin prohibited trial counsel from cross-examining the chemist on the deviation of the scales, and that the net weight of the narcotics in this case was particularly vital, as the stipulated heroin weight was only .5 grams above the statutory threshold. *Id.* at 29.

4

The Appellate Court rejected both parts of this claim. *Wilkerson*, 63 N.E.3d at 941–42. Examining a picture of the heroin on the mirror in the appellate record, the court concluded that the picture depicted one large pile of heroin, not the three distinct piles that Wilkerson claimed. *Id.* at 942 (discussing [7-9] at 8 (picture)). Further, the court noted that "[t]here is a pile of powder in the sifter resting on top of the mass, but a sifter contains holes and would not prevent the substances from commingling." *Id.* As to the total weight of the heroin, the Appellate Court rejected the argument because the chemist stipulated that the scales had been calibrated prior to testing. *Id.*

*Third*, the Appellate Court held that trial counsel had no actual conflict of interest that adversely affected his performance. *Id.* at 941. The court noted that trial counsel stopped representing Senica long before the trial began, that Torray was aware that Senica was paying his legal bills, and that this arrangement had no adverse impact on counsel's performance. *Id.* Further, the court concluded that trial counsel reasonably chose to pursue a strategy of discrediting Mingari's testimony rather than pinning responsibility for the narcotics on Senica. *Id.* The court also noted that Torray agreed to this strategy in advance. *Id.*

After his unsuccessful appeal, Wilkerson filed a petition for leave to appeal (PLA) to the Illinois Supreme Court. [7-5]. The Illinois Supreme Court denied the PLA without opinion. *People v. Wilkerson*, 65 N.E.3d 846 (Ill. 2016) (table).

With the assistance of counsel, Wilkerson timely filed the current petition for a writ of habeas corpus, [1], and sought oral argument on it, [19]. The court has reviewed the petition and relevant briefing. After considering Wilkerson's request for oral argument, the court finds the papers sufficient to decide the petition.

## LEGAL STANDARD

State prisoners seeking a writ of habeas corpus must show that the last state court decision addressing their claims on the merits was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or that the state court decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1)–(2); *Kimbrough v. Neal*, 941 F.3d 879, 881 (7th Cir. 2019). Here, the Illinois Appellate Court decision is the last reasoned opinion because the Illinois Supreme Court summarily denied the PLA. *See Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013).

## ANALYSIS

### I. Sufficiency of the Evidence

Wilkerson first contends that the state put on insufficient evidence to sustain his conviction for possession with intent to deliver. [1] at 5–6, 10–11. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that it violates the

5

Fourteenth Amendment's Due Process Clause if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. Habeas courts assessing a due process sufficiency-of-the-evidence claim must view the evidence "in the light most favorable to the prosecution." *Id.* at 319. And § 2254(e)(1) dictates that state court factfinding is presumed correct unless the petitioner rebuts the presumption "by clear and convincing evidence."

Wilkerson forfeited this claim by not adequately presenting it. The Seventh Circuit requires litigants to sustain their arguments by developing them and citing pertinent authority in support. *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)). Most of the cases Wilkerson cites for his sufficiency-of-the-evidence claim are from Illinois state courts. *See* [1] at 10–11 (citing his state court briefs [7-2] & [7-5], which themselves only cite state cases for the relevant claims); [9] at 1–4 (arguing the facts and citing almost exclusively state cases). But federal habeas relief is not available for errors of state law. *E.g.*, *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015). Thus, Wilkerson's sufficiency-of-the-evidence claim is undeveloped and unsupported by pertinent authority. Under the Seventh Circuit's standard, the claim is forfeited.

Wilkerson does cite *Jackson*, the relevant U.S. Supreme Court case on this claim, in his reply brief. [9] at 4. He cites it for the proposition that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* As noted above, *Jackson* does indeed set out the legal principle that it violates the Fourteenth Amendment's Due Process Clause if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324. But the citation of *Jackson* does not advance the argument that Wilkerson needs to make to succeed on his claim—that the Illinois Appellate Court decision was contrary to or unreasonably applied *Jackson*. Wilkerson does not engage with the relevant legal standards or cases or explain why the Appellate Court decision unreasonably applied *Jackson*, and thus has forfeited the argument.

Even if Wilkerson had properly presented the claim for this court's review, the claim cannot succeed on the merits because the state court decision was not contrary to *Jackson* and did not unreasonably apply it. *Jackson* holds that the constitutional minimum of due process requires that, when taking the evidence in the light most favorable to the prosecution, there must be enough evidence for a rational trier of fact to conclude that the petitioner was guilty beyond a reasonable doubt. 443 U.S. at 324.

Though the state court did not cite *Jackson* (and it did not need to, *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)), the court applied the correct standard and its decision is entitled to AEDPA deference. *See Wilkerson*, 63 N.E.3d at 943

(applying the *Jackson* standard); *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (state court decision entitled to deference because it applied the correct legal standard).

The Appellate Court's decision was not contrary to *Jackson* and was not an unreasonable application of *Jackson*. The court pointed to evidence in the record that a reasonable trier of fact could have determined established constructive possession under Illinois law. *Wilkerson*, 63 N.E.3d at 943–44. Wilkerson was in a storefront with a firearm and only moments later, the police found almost a kilogram of heroin, a cutting agent, and drug-dealing paraphernalia there. *Id.* Wilkerson and his brother were the only two people in the area and Wilkerson fled from the place where the officers found the heroin. *Id.* The state court did not unreasonably apply *Jackson* in concluding that a reasonable trier of fact could have concluded that Wilkerson constructively possessed the heroin.

To the extent that Wilkerson is challenging the state court's factfinding underlying its resolution of the sufficiency-of-the-evidence claim, *see* [9] at 1–2, he has not shown by "clear and convincing evidence" that the state court's relevant factual conclusions were incorrect, 28 U.S.C. § 2254(e)(1). To conclude that Wilkerson constructively possessed the heroin, the state court pointed to five facts. (1) The storefront was vacant. (2) Wilkerson had no reason to be present in the storefront unless he was in possession of the heroin. (3) Officers heard both Torray and Senica inside the storefront from where the heroin was recovered. (4) Both fled the scene. And (5) they were the only individuals in the area. *Wilkerson*, 63 N.E.3d at 944. Wilkerson's briefing, [1], [9], does not explain how any of those conclusions was wrong based on clear and convincing evidence in the record. Thus, those findings bind this court. *See Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000).

Wilkerson's due process claim does not warrant habeas relief.

## II. Ineffective Assistance of Counsel—Heroin Weight

Wilkerson contends that his trial counsel provided ineffective assistance by not challenging the weight of the heroin recovered from the scene. [1] at 6, 11–12. The basis for this claim is twofold. First, Wilkerson makes a factual argument that the heroin recovered from the mirror in the store's bathroom had three distinct piles and that Officer Mingari commingled the three piles by throwing all three into one Rubbermaid bin. *Id.* at 11–12. Trial counsel chose to stipulate to the weight of the heroin, which prevented him from cross-examining Officer Mingari as to this alleged commingling. *Id.* Had counsel instead opted to cross-examine Mingari, Wilkerson argues, the state could not have proven beyond a reasonable doubt that the heroin mixture weighed more than 900 grams. *Id.* Second, Wilkerson argues that trial counsel should have challenged the state's chemist about variance in the

7

accuracy of the scales used to weigh the heroin, because the stipulated weight was only half a gram above the 900-gram statutory threshold. *Id.* at 11.

To show ineffective assistance of counsel, a habeas petitioner must demonstrate that counsel's performance fell below the constitutional minimum and a reasonable probability that but for the deficient performance, the result would have been different. *Strickland*, 466 U.S. at 687. Where a federal habeas court is reviewing a state court's denial of an ineffective-assistance claim under AEDPA, the court's review is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In this posture, a wide range of trial counsel's strategic decisions about how to present the evidence at trial constitute constitutionally sufficient performance. *E.g.*, *Dunn v. Reeves*, 141 S. Ct. 2405, 2410–13 (2021); *Florida v. Nixon*, 543 U.S. 175, 192 (2004); *Bell v. Cone*, 535 U.S. 685, 701–02 (2002). The court may not disturb the state court's verdict unless "*every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn*, 141 S. Ct. at 2411 (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)) (internal quotation marks omitted).

Like Wilkerson's first claim, this claim is also forfeited. Wilkerson cites one relevant Supreme Court case, *Knowles v. Mirzayance*, 556 U.S. 111 (2009). [9] at 3 (citing *Mirzayance*, 556 U.S. at 121). *Mirzayance* quotes § 2254(d)(1), but Wilkerson does not explain why the Illinois Appellate Court decision was an unreasonable application of *Mirzayance* or any other clearly established federal law as determined by the Supreme Court. *See* § 2254(d)(1). Without citation to pertinent authority, this argument is undeveloped and thus forfeited. *See, e.g.*, *Mahaffety v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

On the merits, both aspects of the ineffective-assistance claim are unpersuasive.

*Challenging the Alleged Commingling.* Both the trial court and the Appellate Court concluded that trial counsel's strategic choice not to pursue the commingling strategy was not deficient performance under *Strickland*. *Wilkerson*, 63 N.E.3d at 939, 942. Strategic choices by trial counsel are "virtually unchallengeable" if counsel makes them after a thorough investigation. *Raygoza v. Hulick*, 474 F.3d 958, 962 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 690–91). Wilkerson put forward no facts in his habeas petition or reply brief in this court—or in the state courts—indicating that trial counsel made a less-than-thorough investigation into commingling the piles. As the Appellate Court pointed out, the heroin on the mirror in the bathroom does not appear to be in three distinct piles as Wilkerson contends. *Wilkerson*, 63 N.E.3d at 942. Rather, a photograph in the state court record depicts what is more accurately described as one large pile with a sifter in the middle, which has holes and would have permitted any "distinct" pile in the sifter to mix prior to Officer Mingari placing all the powder in a bin together. *Id.* (discussing [7-9] at 8). The state court's factual conclusion that the heroin was all in one pile is

8

conclusive unless Wilkerson can show by clear and convincing evidence that the conclusion was erroneous. 28 U.S.C. § 2254(e)(1). But this court's own review of the photograph leads it to the same conclusion as the state court; it is far from "clear and convincing" that there were three distinct piles in any meaningful sense.



[7-9] at 8.

With these facts settled, trial counsel's decision to pursue a strategy focused on questioning Officer Mingari's vantage point fell within the nearly limitless discretion that *Strickland* allows for strategic decisions. "Vigorous representation of a criminal defendant often entails difficult choices that competent (indeed, first-rate) defense attorneys might make differently." *Clay v. United States*, 311 F. Supp. 3d 911, 926 (N.D. Ill. 2018) (quoting *Killingsworth v. Bensko*, 386

9

F. Supp. 2d 949, 960 (N.D. Ill. 2005)). Wilkerson's briefing does not show that the state court's application of this core Sixth Amendment principle was unreasonable.

*Challenging the Chemist.* Wilkerson also argues that trial counsel provided ineffective assistance because, by stipulating to the weight of the heroin, he was precluded from cross-examining the forensic chemist about deviations in the scales used to weigh it. [1] at 11–12. The Appellate Court dismissed this claim summarily, noting that the forensic chemist's stipulation included that the scales were calibrated prior to testing. *Wilkerson*, 63 N.E.3d at 942. The Appellate Court also cited Illinois law favoring stipulated testimony of forensic experts on the presence of controlled substances. *Id.* (citing *People v. Stewart*, 851 N.E.2d 162 (Ill. App. Ct. 2006)).

Though not perfectly connected to the law of ineffective assistance of counsel, the court's resolution of this claim was nonetheless a reasonable application of *Strickland* and was not contrary to *Strickland*. Like the previous aspect of this claim, trial counsel made a strategic decision to focus on an argument that Officer Mingari could not have seen or identified Wilkerson from Mingari's vantage point. *See id.* at 939 (discussing trial counsel's evidentiary-hearing testimony). Though the stipulated weight of the heroin was quite close to the statutory threshold, trial counsel reasonably could have concluded that challenging the weight, especially in light of the chemist's stipulated testimony that she had calibrated the scales, was an unwise strategy and use of trial time, particularly because Illinois law favors stipulations on these matters. *See id.* at 938, 942.

Wilkerson does not explain how the Appellate Court's resolution of this issue was an unreasonable application of any Supreme Court case on ineffective assistance. The state court gave the wide deference that the Supreme Court affords to trial counsel performance and explained why counsel's choice to stipulate to the drug weight was not unreasonable in light of the facts of the case and the prevailing law in the state. *See id.* Thus, Wilkerson's second claim is not a sufficient basis to grant habeas relief.

### III. Ineffective Assistance of Counsel—Conflict

Wilkerson's final argument is that his trial counsel provided ineffective assistance by choosing not to assign responsibility for the drugs found at the scene to Senica, Wilkerson's brother and codefendant. [1] at 6, 12. Wilkerson contends that this choice was due to a conflict of interest and bases the conclusion on two facts. First, Senica previously engaged Torray's trial counsel at the bond hearing stage of the case. *Id.* And second, Senica paid Torray's trial counsel for Torray's representation at trial. *Id.*

As with Wilkerson's first two claims, the third is likewise forfeited. Wilkerson neither cites nor engages with the Supreme Court's cases on conflicted

10

counsel. Wilkerson's argument rests on claims about conflicted counsel without legal support. This argument is not properly presented for the court's review and is thus forfeited. *See Mahaffety*, 588 F.3d at 1146.

This claim is also unpersuasive on the merits. The Illinois Appellate Court did not unreasonably apply *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and its decision was not contrary to *Sullivan*. The court rejected Wilkerson's claim as to trial counsel's past representation of Senica because it found that any joint representation conflict was cured when trial counsel began to represent Torray only. *Wilkerson*, 63 N.E.3d at 941. And the court rejected the claim as to Senica's payment of Torray's trial counsel because (1) Torray was aware of and consented to the payment and (2) the payment arrangement had no adverse impact on trial counsel's performance. *Id.*

The Appellate Court cited Illinois law on conflicts of interest in addressing Wilkerson's claim. *Id.* at 940–41. Illinois law divides conflict-of-interest claims into two categories: per se conflict and actual conflict. *Id.* (citing *People v. Austin M.*, 975 N.E.2d 22, 41 (Ill. 2012)). Per se conflicts merit automatic reversal under Illinois law. *Id.* But Wilkerson's state appellate briefing did not argue that trial counsel had a per se conflict. *See* [7-2] at 32–34. Actual conflict claims, by contrast, require a showing that (1) an actual conflict existed and (2) the conflict adversely affected the lawyer's performance. *Wilkerson*, 63 N.E.3d at 941; *see also Sullivan*, 446 U.S. at 348 (same). The Appellate Court concluded that Senica's paying Torray's legal bills had no adverse impact on trial counsel's performance. *Wilkerson*, 63 N.E.3d at 941. It reasoned that the strategic choice to attack Officer Mingari's vantage point rather than shift responsibility for the drugs to Senica was a sound trial strategy. *Id.* The court further noted that Torray was aware of this strategy and agreed to pursue it. *Id.*

The Appellate Court decision was not an unreasonable application of *Sullivan*. In *Sullivan*, the Supreme Court held that to establish a violation of the Sixth Amendment, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.[4] Though the Illinois Appellate Court did not cite *Sullivan*, it applied the correct standard, so its decision is still entitled to AEDPA deference. *See Packer*, 537 U.S. at 8; *Mosley*, 689 F.3d at 844.

*Conflict due to past representation.* The Supreme Court's cases have left open the question whether past representation can cause a disabling conflict in certain circumstances. *See Mickens v. Taylor*, 535 U.S. 162, 174–76 (2002). In fact, the

---

[4] Wilkerson did not object to counsel's past representation of Senica or the fact that Senica was paying his legal bills (in fact, he directed trial counsel to collect the fees from Senica), so *Sullivan* applies, not *Holloway v. Arkansas*, 435 U.S. 475 (1978). *See Reynolds v. Hepp*, 902 F.3d 699, 707 (7th Cir. 2018).

Court has never held that *Sullivan* (as opposed to *Strickland*) applies where the alleged conflict is due to past representation. *See Mickens*, 535 U.S. at 175 (quoting *Sullivan*, 446 U.S. at 350). Assuming *Sullivan* applies, Wilkerson must show that counsel "*actively represented*" conflicting interests. *Id.* (quoting *Sullivan*, 446 U.S. at 350) (emphasis in *Mickens*). The Appellate Court held that no actual conflict existed because it was cured by Senica obtaining his own lawyer and the brothers having separate representation during the trial. *Wilkerson*, 63 N.E.3d at 941. That conclusion was a reasonable application of *Sullivan*, especially in light of the Supreme Court's decision in *Mickens* leaving open the question of *Sullivan*'s reach in successive-representation cases. *See Mickens*, 535 U.S. at 174–76.

*Conflict due to source of payment.* As to the claim that trial counsel had a conflict because Senica paid trial counsel for Torray's representation, Torray points to no Supreme Court case holding that payment of a lawyer by a codefendant constitutes a disabling conflict. *Cf. Reynolds v. Hepp*, 902 F.3d 699, 707 (7th Cir. 2018) ("the Supreme Court has not yet extended its multiple-representation decisions to financial conflicts of interest between attorney and client, let alone provided clear guidance as to whether or under what circumstances [such a conflict] violates a defendant's right to counsel"). The dearth of Supreme Court precedent on this point means that no clearly established federal law existed that the state court could have unreasonably applied. *Id.*; *see Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Even framing the *Sullivan* "actual conflict" inquiry at a higher level of generality and assuming Senica's payment constituted a conflict, the Appellate Court reasonably held that the conflict did not adversely affect trial counsel's performance. *Wilkerson*, 63 N.E.3d at 941. At the outset, the scope of the phrase "adverse effect" is not clear in the Supreme Court's cases, thus making it nearly impossible for a state court to unreasonably apply a "clearly established" rule. *See Reynolds*, 902 F.3d at 710 (quoting *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (*en banc*)); *see also Musladin*, 549 U.S. at 77. The Seventh Circuit's test for an adverse effect from *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994), is whether "but for the attorney's actual conflict of interest there is a reasonable likelihood that counsel's performance somehow would have been different." *Id.* at 771 (citation and internal quotation marks omitted); *see also Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022). But as the Seventh Circuit explained in *Reynolds*, *Stoia*'s broad test is not binding on state courts due to AEDPA, which only requires state courts to reasonably apply clearly established federal law as determined by the United States Supreme Court. *Reynolds*, 902 F.3d at 710. As far as the court can discern, the Seventh Circuit has never applied *Stoia* in a § 2254 case. Wilkerson does not cite one. [1] at 6, 12; [9] at 1–4.

The Illinois Appellate Court reasonably took a narrower approach than *Stoia* when assessing the adverse effect here, focusing on whether the alleged conflict's effect was truly "adverse" and highlighting Wilkerson's acquiescence in trial counsel's strategic choices. *Wilkerson*, 63 N.E.3d at 941. The record lacks evidence

12

of any connection between trial counsel's strategic choices and Senica's paying Torray's legal bills. Torray was aware of trial counsel's planned defense strategy and agreed to it. *See* [7-8] at 163–65. And it was a reasonable strategy within the wide latitude the Sixth Amendment affords to counsel's strategic decisions. *See, e.g., Dunn*, 141 S. Ct. at 2411; Part II, *supra*.

Nothing in the record, including the examination of trial counsel in the state evidentiary hearing, indicates that trial counsel chose the vantage-point strategy over one that would shift responsibility to Senica because Senica was paying trial counsel. *See* [7-8] at 163–65, 169–72, 179, 183–84, 186, 191–94; *cf. Blake v. United States*, 723 F.3d 870, 882 (7th Cir. 2013) (examining record to determine whether defense counsel's actions were motivated by an alleged conflict). Trial counsel testified that he chose the vantage-point strategy because he thought it was the best chance for his client to be found not guilty; even after trial, he thought that Wilkerson should have been found not guilty. [7-8] at 164. On questioning by the state's attorney, trial counsel testified that Torray not only consented to Senica's paying for Torray's representation, but directed trial counsel to obtain the fees from Senica. *Id.* at 194. The Appellate Court reasonably applied *Sullivan* when holding that Senica's paying Torray's trial counsel's fees did not adversely affect trial counsel's performance.

Wilkerson's third claim thus does not warrant habeas relief.

## IV. Certificate of Appealability

In federal habeas cases, petitioners may not appeal unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). To obtain a certificate, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Wilkerson has not made the requisite showing.

Wilkerson's claims are undeveloped and thus forfeited. *See Holm*, 326 F.3d at 877. On the merits, no reasonable jurist could conclude that the Illinois Appellate Court's resolution of any of the claims was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Therefore, the court declines to issue a certificate of appealability.

## CONCLUSION

The petition for a writ of habeas corpus [1] is denied. Enter final judgment. Civil case terminated.

Dated: August 25, 2023 /s/ Martha M. Pacold